166 So.2d 585 (1964)
Ray E. GREEN, Comptroller of the State of Florida, as Commissioner of Revenue, Appellant,
v.
STATE of Florida ex rel. John H. PHIPPS, as Executor of the Estate of Margarita C. Phipps, deceased, Appellee.
Ray E. GREEN, Comptroller of the State of Florida, as Commissioner of Revenue, Appellant,
v.
STATE of Florida ex rel. MacGregor MASON, as Executor of the Estate of Mary Louise Pentecost, deceased, Appellee.
Nos. 32898, 32897.
Supreme Court of Florida.
July 22, 1964.
*586 James W. Kynes, Atty. Gen., Fred M. Burns, Jack A. Harnett and Victor V. Andreevsky, Asst. Attys. Gen., for appellant.
Alan Lindsay and Alley, Maass, Rogers & Lindsay, Palm Beach, for appellee John H. Phipps.
Sherwin P. Simmons and Fowler, White, Gillen, Humkey & Trenam, Tampa, for appellee MacGregor Mason.
HOBSON, Justice (Ret.).
The above styled cases remain consolidated here upon appeal as they were at the trial level. The learned Circuit Judge, Honorable Hugh M. Taylor, incorporated in the final judgment an opinion which very clearly and succinctly states the reasons which impelled him to grant the relief sought by the Relator in each of these suits wherein a peremptory writ of mandamus was requested.
After hearing arguments of counsel and carefully considering the briefs filed herein, we have concluded that the reasoning of, and the analysis made by, Judge Taylor in that portion of the final judgment which is, in effect, an opinion upon the question of law presented to him plumbs our reasoning and analysis and that the final judgment which he entered is without doubt correct.
It is our view that it would be a waste of time and effort to attempt to refurbish the erudite opinion which he has written[1] and which we now quote and adopt as our own:
"These cases present the same question of law and have been consolidated for the purpose of hearing. For convenience this Order will be entered in both cases to avoid preparing two separate judgments.
"In case No. 10490 it appears that Margarita C. Phipps died a resident of Florida leaving property situate in Florida and property having a taxable *587 situs in the State of New York. New York levied and collected estate taxes from this estate in the amount of $138,610.92. This was a constitutionally valid estate tax attributable to the property belonging to this estate having a taxable situs in the State of New York. The Comptroller of Florida has levied and the estate has paid estate taxes in Florida aggregating $591,638.07 together with interest in the amount of $91,809.07. The total credit allowable upon the federal estate taxes for the payment of state taxes upon this estate was $704,807.72. It follows that the total of the state taxation of this estate by New York and Florida exceeds the credit allowable upon the federal taxes by $25,441.27 and that with respect to this amount the estate has paid Florida interest in the amount of $4,827.56. Proper application for refund was made and denied.
"In case No. 10504 it appears that Mary Louise Pentecost died a resident of Florida leaving property situate in Florida and property having a taxable situs in the State of Minnesota. Minnesota levied and collected estate taxes from this estate in the amount of $9,235.21. This was a constitutionally valid estate tax attributable to the property owned by the estate in Minnesota. The total credit on federal estate taxes allowable to this estate was $6,985.29. However, the Comptroller levied and the estate has paid under protest an estate tax to Florida in the amount of $851.44 principal and $163.61 interest. Proper application for refund of these taxes was made and denied.
"The sole question for determination is whether or not the Florida estate tax law can result in the levying upon an estate of a tax which will make the tax burden upon that estate greater than it would otherwise be.
"This involves a construction of both the Constitution and the statute. Ordinarily the Court will avoid considering a constitutional question if the particular matter in litigation can be determined by a construction of the statute, but under the circumstances of this case the Court feels impelled to examine the constitutional question for two reasons:
"First, it is a matter of great public importance that the extent of the taxing power of the state be settled and thoroughly understood by state officers and by taxpayers.
"Second, it is necessary to explore the constitutional question in order to answer the argument advanced by the Attorney General in support of his construction of the statute.
"The Court finds that under Section 11, Article IX of the Constitution of Florida [F.S.A.] the legislature is without power to levy or authorize the levy of an estate tax which has the effect of increasing the tax burden upon the estate of a resident of Florida. The Court also finds that Section 198.02, Florida Statutes [F.S.A.], properly construed, does not levy or impose a tax upon estates of residents of Florida except such tax as may be levied and collected without increasing the aggregate tax burden upon the estate.[1] [Footnote 1: This does not mean that the personal representative of and (sic) estate may fail to pay Florida Taxes within the time required as a prerequisite to claiming credit on federal taxes and then deny liability for the state taxes because the federal credit cannot then be secured. See Wells v. Gay, 58 So.2d 690.] It may be well to state here the history of departmental construction of this and prior taxing statutes to which both parties have given consideration in their arguments.
"The Attorney General of Florida on April 14, 1933 rendered an opinion holding that the credit allowed on federal *588 taxes for the payment of state taxes should be apportioned between the states in the same way as the federal taxing authorities fix the value of the property located in the affected states.
"Shortly after that opinion was rendered there was introduced in the legislature and passed a revision of the inheritance tax law which the Comptroller construed as changing the law as expressed in the cited Attorney General's opinion and as providing that Florida would not levy any tax upon an estate except such as might be paid without increasing the total tax upon that estate. This would necessarily imply that other states could impose estate taxes upon property located in those states to such an extent that the entire credit on federal taxes would be absorbed by those states leaving no basis for any Florida tax upon such estates. This construction was adhered to by the Comptroller's office until January 25, 1961, when the Attorney General rendered another opinion upon this question.
"There was no substantial change in the statute between the revision of 1933 and the present statute. The last cited opinion of the Attorney General takes the position that this construction of the statute `would in effect be the payment of taxes levied by other states with funds due to or of the State of Florida' which in his opinion would violate Section 10, Article IX of the Florida Constitution. Since January 25, 1961, the Comptroller's office has adhered to this opinion.
"Recognizing the rule that in case of doubt as to the meaning of a statute departmental construction will be given great weight, the Court will not in this case undertake to evaluate the relative weight of the differing departmental constructions which this statute has received from time to time.
"In order to properly construe and apply Section 11, Article IX of the Constitution it is necessary to consider its history. The Constitution of Florida prior to 1924 had no specific provision relating to the levying of inheritance taxes. Florida was seeking to attract wealth from other states to develop her natural resources and in 1923 the legislature proposed and in 1924 the people adopted an amendment to the Constitution prohibiting the levy by the State of Florida of taxes upon inheritance or incomes of residents of this State. Subsequently, federal statutes imposing taxes upon the estates of decedents were amended so as to allow credit upon the federal estate taxes for amounts paid to states for similar taxes imposed by the states. This resulted in citizens of Florida paying the same total taxes upon estates as citizens of other states but since no inheritance tax could be levied in Florida no part of this tax could be collected by the State of Florida and used for the operation of the state government. Consequently all the expenses of government in this state had to be paid from other forms of taxation. In order to meet the inequities of this situation and at the same time preserve the principle of guaranteeing to prospective residents the protection of the amendment of 1924 the legislature in 1929 proposed and the people in 1930 ratified a further amendment to the Constitution providing an exception to the prohibition against the levy of inheritance taxes in these words: `the legislature may provide for the assessment, levying and collection of a tax upon Inheritances, or for the levying of Estate taxes, not exceeding in the aggregate the amounts which may by any law of the United States be allowed to be credited against or deducted from any similar tax upon Inheritances, or taxes on estates assessed or levied by the United States on the same subject, but the power of the Legislature to levy such Inheritance taxes, *589 or Estate Taxes in this State, shall exist only so long as, and during the time, a similar tax is enforced by the United States against Florida Inheritances or Estates and shall only be exercised or enforced to the extent of absorbing the amount of any deduction or credit which may be permitted by the laws of the United States, now existing or hereafter enacted to be claimed by reason thereof, as a deduction or credit against such similar tax of the United States applicable to Florida Inheritances or Estates.' The first legislature that convened after this amendment passed several statutes implementing this amendment.[2] [Footnote 2: Laws of Florida, Acts of 1931, Chapters 14-738, 14-739, 15-746, 15-747, 15-748.] The history of the times in which these constitutional provisions were adopted, the language of the provisions themselves and the language of the implementing statutes (too lengthy to quote here) clearly indicate that it was the intent of the people of Florida that the State of Florida would impose such taxes but only such taxes upon estates of decedents as could be paid to Florida and deducted from the federal taxes without increasing by one jot or one tittle the total tax burden upon such estates.
"The Attorney General argues that this has the effect of violating Section 10 of Article IX of the Florida Constitution. The Court cannot agree with this argument but if the argument were otherwise sound it could not prevail for the reason that Section 11 of Article IX is a later expression of the people and if it conflicts with Section 10, Article IX then the prohibition of Section 10 must yield to the latest expression of the popular will and Section 11 must be given its full force and effect.
"The statute under consideration is quite plain. Skeletonized it reads as follows: `A tax is imposed * * * the estate of every * * * resident of this state, the amount of which shall be a sum equal to the amount by which the credit allowable under the applicable federal Revenue Act for estate * * * taxes actually paid to the several states shall exceed the aggregate amount of all constitutionally valid estate * * * taxes actually paid to the several states * * * (other than this state) in respect to any property owned by such decedent * * *.' This language only imposes a Florida tax which is allowable as a credit on federal taxes after allowing the estate to claim credits against the federal tax for all estate taxes paid to other states.
"When the Constitution and the statute are applied to the factual situation presented by these cases it is apparent that the credit allowed by the federal tax laws on the estate of Mary Louise Pentecost is less than the amount of estate taxes paid to the State of Minnesota and there is no way in which Florida can exact a tax from this estate without imposing a burden upon the estate in excess of the total amount of the federal tax. The Constitution forbids such a tax and the statute does not authorize it.
"The same rule applies ratably to the estate of Margarita C. Phipps. The credit allowed on the federal tax on that estate is only partially consumed by the New York tax but the Florida tax as actually levied when added to the New York tax would impose a tax burden upon the estate $25,441.27 greater than the credit allowable on the federal tax. This is forbidden by the Constitution and is not authorized by the statute.
"The argument is advanced that it is inequitable for one state to secure all of the benefits of the credit allowed *590 or the federal tax for the payment of state taxes. With this abstract conclusion the Court is in complete agreement, but the defect is in the federal law which does not require the proper allotment of the credit as between the states having taxable interest in the property belonging to the estate of a particular decedent.
"It is beyond the jurisdiction of this Court to adjust this inequity in the law because to do so would require a change of the federal law or the law of a sister state.
"It certainly would not cure the injustice to impose an additional burden upon the taxpaying estate contrary to the Constitution and not authorized by the statute as written."
The final judgment entered in these cases by the Circuit Court in and for Leon County, Florida, is hereby 
Affirmed.
DREW, C.J., and THOMAS, ROBERTS, THORNAL, O'CONNELI, and CALDWELL, JJ., concur.
NOTES
[1] gild refined gold, to paint the lily, To throw a perfume on the violet,
To smooth the ice, or add another hue Unto the rainbow, or with taper-light
To seek the beauteous eye of heaven to garnish,
Is wasteful and ridiculous excess."
William Shakespeare, King John, Act IV, Sc. 2, Line 11