[No. 51636-7.   En Banc.   September 11, 1986.]

THE ESTATE OF CLARE E. TURNER, *Respondent,* v. THE
DEPARTMENT OF REVENUE, *Appellant.*

*Kenneth O. Eikenberry, Attorney General,* and *Maureen Hart, Assistant,* for appellant.

*Turner, Stoeve, Gagliardi & Goss, P.S.,* and *Richard P. Algeo,* for respondent.

GOODLOE, J.—The estate of Clare E. Turner brought a refund action to recover estate tax it paid to the Washington State Department of Revenue. The estate paid no federal estate tax because it reduced its federal tax obligation to zero by claiming two federal tax credits. Under its interpretation of the Washington estate tax law, RCW 83.100,

the trial court found that the Turner estate owed no state estate tax because the estate owed no federal estate tax. The trial court ordered a tax refund be paid to the Turner estate and the Department appeals. We affirm.

Clare E. Turner died on June 11, 1983. His estate consisted, in part, of a substantial inheritance from a friend, Whitney J. K. Simmons. Simmons died approximately 6 months before Turner's death and at that time bequeathed his entire estate to Turner. The Simmons estate was valued in the estate of Clare E. Turner, for federal estate tax purposes, at approximately $475,000. The Simmons estate had been subject to and paid federal estate tax in the amount of $85,480.23 and Washington estate tax of $12,300.63.

After Turner's death, his estate filed a United States Estate Tax Return Form 706 and listed Turner's total gross estate as $799,520. After allowable deductions, Turner's taxable estate amounted to $464,206. This taxable estate was tentatively subject to a gross federal estate tax liability of $143,630. However, the Turner estate satisfied its federal tax liability by applying two credits against it. The first credit was a unified credit which every estate is permitted to apply against its federal estate tax liability under I.R.C. § 2010 (1982). The unified credit allowed at the time Turner died was $79,300, which reduced his tentative $143,630 federal tax liability to $64,330. I.R.C. § 2010(b) (1982). The second credit was the prior transfer credit. Under I.R.C. § 2013(a) (1982), an estate may claim a credit based on a decreasing scale against its federal tax liability for an amount previously included in any other estate and taxed by the federal government during the past 10 years. Because Turner received the bequest from Simmons within 2 years of Turner's own death, Turner's estate was entitled to a 100 percent credit for the amount of federal estate tax, $85,480.23, previously paid by Simmons' estate on that bequest. The estate claimed a prior transfer credit of $64,330 which reduced its remaining federal tax liability to zero. Thus, the estate paid no federal estate tax.

The Turner estate claimed on its filed Washington estate

tax return that it was not obligated to pay any state estate tax because it paid no federal estate tax. The Department objected and notified the estate that it owed state estate tax in the amount of $8,854.59 plus interest. The Turner estate paid this amount under protest and commenced a refund action in Spokane County Superior Court.

Washington's current estate tax scheme, codified in RCW 83.100, was enacted when Washington voters passed Initiative 402 in November 1981. The Turner estate claims Initiative 402 relieves it from paying state estate tax. The Department contends that it properly assessed state estate tax in the amount of $8,854.59. Both parties moved for summary judgment. The trial court ruled in favor of the Turner estate and ordered the Department to refund the amount the estate paid in state estate tax plus interest. The Department appealed. This court granted direct review.

The primary issue presented is whether pursuant to Initiative 402 an estate must pay Washington estate tax although it is not required to pay any federal estate tax because it claimed federal tax credits exclusive of the I.R.C. § 2011 (1982) credit.

Washington's estate tax is called a "pickup tax" because it picks up for the benefit of the State the maximum credit for state estate tax allowed by I.R.C. § 2011 (1982). RCW 83.100.030(1) reads:

> (1) A tax in an amount equal to the *federal credit* is imposed on the transfer of the *net estate* of every resident.

RCW 83.100.020(3) defines "federal credit":

> (3) "Federal credit" means the maximum amount of the credit for estate death taxes allowed by section 2011 for the decedent's net estate . . .

RCW 83.100.020(5) defines "net estate":

> (5) "Net estate" means "taxable estate" as defined in section 2051 of the United States Internal Revenue Code of 1954, as amended or renumbered . . .

Application of these statutes show that Washington's estate tax base is the decedent's "taxable estate" as defined

for federal estate tax purposes by I.R.C. § 2051 (1982). Under I.R.C. § 2051 (1982), decedent's taxable estate is his gross estate less certain authorized deductions. The taxable estate listed on Turner's United States Estate Tax Return is $464,206.

Pursuant to RCW 83.100.020(5), the Department viewed the $464,206 figure as Turner's "net estate" for state death tax purposes and proceeded in a literal manner to determine the tax due. Since Washington imposes a tax pursuant to RCW 83.100.030(1) in an amount equal to the "maximum amount of the credit for estate death taxes allowed by section 2011 for the decedent's net estate", RCW 83.100.020(3), the State referred to I.R.C. § 2011 (1982) to compute the tax. I.R.C. § 2011(b) (1982) contains a table providing formulas for determining the actual amount of the maximum credit the federal government will allow for state estate tax. I.R.C. § 2011(b) (1982) also states: "For purposes of this section, the term 'adjusted taxable estate' means the taxable estate reduced by $60,000."

Since Turner's taxable estate was $464,206, the "adjusted taxable estate" for purposes of I.R.C. § 2011 (1982) is $404,206. By applying the appropriate I.R.C. § 2011(b) (1982) formula, the maximum amount of the federal credit for state estate tax on Turner's adjusted taxable estate computes to $8,854.59. The estate does not dispute the Department's mathematical computations. Rather, certain basic assumptions about RCW 83.100 are disputed.

The Department contends that $8,854.59 (the amount equal to the federal credit) is the proper amount of Washington's estate tax and maintains that this is so independent of the fact that the Turner estate paid no federal estate tax. The Department argues that an estate is not exempt from Washington's estate tax because it has federal estate tax credits, exclusive of the I.R.C. § 2011 (1982) credit, which equal or exceed its gross federal estate tax liability. The Department contends that Washington's estate tax is imposed on the transfer of the net estate of

*every* Washington resident in an amount equal to the credit for state death taxes allowed by I.R.C. § 2011 (1982) without reference to any other federal credits or reductions in federal tax liability.

The Department treats I.R.C. § 2011 (1982) as an independent schedule for determining the amount of Washington's estate tax. In the Department's view, it is of no consequence for the purpose of computing state estate tax that the Turner estate reduced its federal tax liability to zero by taking advantage of (1) the I.R.C. § 2010(b) (1982) unified tax credit and (2) the I.R.C. § 2013(a) (1982) prior transfer credit. Although Washington collected $12,300.63 from the Simmons estate, the Department's approach would result in a second tax on the Simmons bequest now that it has passed through the Turner estate to Turner's beneficiaries. This is contrasted with the approach of the federal government which does not demand a second tax on the Simmons money as it passes through the Turner estate.

The Turner estate contends that Washington residents, in enacting Initiative 402, intended that a state estate tax would be due only if and when an estate tax was payable to the United States. The Turner estate claims that Initiative 402, RCW 83.100, was intended to be complementary with and not independent of the federal estate tax scheme. We agree. Prior to the enactment of Initiative 402, state estate tax liability was calculated by reference to a state inheritance tax schedule that was independent of the federal estate tax scheme. *See* former RCW 83.08. Former RCW 83.40.010 also provided, in part:

> Where the tax imposed by the inheritance tax laws of the state of Washington is of a lesser amount than the maximum credit of the federal estate tax allowed by the federal estate tax act, then the tax provided for by the said inheritance tax laws of the state of Washington shall be increased so that the amount of tax due the state of Washington shall be the maximum amount of the credit allowed under said federal estate tax act: *Provided, That the said additional tax shall be paid out of the same funds as any ordinary charge against the estate.*

(Italics ours.)

■ At the time of the former enactments, many Washington estates paid no federal estate tax but were still required to pay Washington state inheritance tax. Washington residents repealed the previous independent inheritance tax scheme when they approved Initiative 402. This court stated in *In re Estate of Hitchman,* 100 Wn.2d 464, 467, 670 P.2d 655 (1983), that "[i]n interpreting Initiative 402, we must look to the voters' intent and the language of the Initiative as the average informed lay voter would read it." This court also set forth general guidelines for interpreting initiatives in *Department of Rev. v. Hoppe,* 82 Wn.2d 549, 552, 512 P.2d 1094 (1973). *Hoppe* states, at page 552, that interpreters should: (1) consider the intent and spirit of the law over its letter; (2) in case of doubt, construe tax statutes strongly against the government and in favor of the taxpayer, *but see In re Estate of Hitchman,* at 466; (3) consider the collective intent of the people as it would ordinarily consider "legislative intent"; and (4) evaluate information included in the official voters pamphlet to determine the purpose and intent of a successful initiative.

■ Using these guidelines, we look to the official explanation of Initiative 402 provided by the Attorney General in Voters Pamphlet 6 (1981). In it the average informed lay voter learned:

> This initiative would repeal the state's existing inheritance and gift tax laws and would substitute, in their stead, a tax on the transfer of the net estate of a resident decedent . . . *Only estates liable for federal estate tax would be subject to tax under the initiative* and the amount of the tax would be limited to the credit allowable against the federal tax.
>
> . . .
>
> The adoption of the tax contained in the initiative together with recent increases in the federal estate tax exemptions would operate to reduce the number of estates in which transfers are now taxable under present state law, and, in most other cases, to lower the level of taxation on those estates, which remain taxable, below that imposed under the current state rate structure.

(Italics ours.) This language shows that Washington estate tax is limited to those estates which are required to pay federal estate tax.

Instructions to the 1982 Washington Estate Tax Return also support the estate's position. They read, in part:

> The only sum to be collected on the estate by Washington will be that amount which the Federal Government allows to be deducted from the Federal estate tax when a tax is paid to the decedent's state. *This credit, (or deduction) is a revenue sharing feature of the Federal Government and does not add to the total tax paid by the taxpayer.*

(Italics ours.) Clerk's Papers, at 29. Similarly, 42 Am. Jur. 2d *Inheritance, Estate, and Gift Taxes* § 244, at 452 (1969), explains that pick–up statutes "do not increase the amount of the combined state and federal tax liability, but merely authorize the state to share in the proceeds of the federal estate tax to the extent of the allowable credit . . ." (Footnote omitted.) We find that the Turner estate is not required to pay a state estate tax. To hold otherwise would defeat any revenue sharing purpose since the federal government does not require any tax payment. Furthermore, a state estate tax in this case would add to the total tax obligation of the estate since it is not required to pay federal estate tax.

In *Dickinson v. Maurer*, 229 So. 2d 247 (Fla. 1969), the Florida court addressed the exact issue raised here when it confronted a Florida estate tax statute, Fla. Stat. Ann. § 198.02 (West 1971), with language very similar to RCW 83.100.030(1). *See also New York Trust Co. v. Doubleday*, 144 Conn. 134, 145, 128 A.2d 192 (1956). As here, the estate in *Dickinson* had paid no federal estate tax because it also benefited from an I.R.C. § 2013(a) (1982) prior transfer credit. The *Dickinson* court invalidated a state estate tax assessment against the estate because the estate had paid no federal estate tax. The court concluded, at page 249:

> The Florida estate tax is *geared to the federal estate tax*. We hold that *when an estate* of a Florida resident *is*

*not subject to federal estate taxes,* as in this case, *it is likewise not subject to Florida estate tax.*

(Italics ours.)

The Department questions *Dickinson*'s persuasive value because it contends the Florida court's decision is rooted uniquely in Florida constitutional law. Florida's constitution bars an estate or inheritance tax which results in an increased total federal and state tax burden on any Florida resident.

> "The history of the times in which these constitutional provisions were adopted, the language of the provisions themselves and the language of the implementing statutes * * * clearly indicate that it was the intent of [Florida residents to] . . . impose such taxes but only such taxes upon estates of decedents as could be paid to Florida and deducted from the federal taxes *without increasing by one jot or one tit[t]le the total tax burden upon such estates.*"

(Italics ours.) *Dickinson,* at 249, quoting *Green v. State ex rel. Phipps,* 166 So. 2d 585, 589 (Fla. 1964). The Department argues that *Dickinson* is distinguishable because Washington has no similar constitutional history. We disagree. Just as the Florida court was obliged to discern the intent of the people when it adopted its constitutional provision, *Dickinson,* at 249, it is the function of this court to discern voter intent behind Initiative 402. *Hoppe,* at 552; *In re Estate of Hitchman,* at 467.

The Department claims that the estate's position relegates the state estate tax credit to the basement in the world of federal estate tax credits. For state estate tax purposes, the Department argues that the estate may not reduce its federal tax liability by applying the unified tax credit first, the prior transfer credit second, and claim that the state tax credit is no longer needed because the estate no longer owes any tax to the federal government. The estate's approach will permit Washington to collect estate tax only when there are net federal estate tax obligations

remaining against which the state tax credit may be applied. To adopt any other result would be contrary to the language of Voters Pamphlet 6 (1981), which states: "Only estates liable for federal estate tax would be subject to tax under the initiative". The Department's position would (1) cause a second estate tax to be imposed upon funds that have already been taxed once (*i.e.*, the Simmons bequest) and (2) undoubtedly add to the ultimate tax burden of the estate. Voters passing Initiative 402 intended an opposite result.

The present Washington estate tax scheme, unlike its predecessor statutes, is not intended to operate independently of the federal tax scheme. Rather, we find that Washington's estate tax scheme is intended to complement the federal scheme. By not considering the federal tax credits, the Department added to the estate's ultimate tax burden which is contrary to the intention of Washington voters who enacted Initiative 402. We affirm the trial court's determination that the Turner estate owed no Washington estate tax.

■ We recognize this decision challenges WAC 458–57–560(6) promulgated to implement RCW 83.100. WAC 458–57–560(6) states:

> (6) The amount of the tax shall not be reduced by the amount of any credit allowed for federal purposes other than the amount of credit prescribed under section 2010 of the Internal Revenue Code. Specifically, the amount of the state estate tax shall not be reduced by the amount of any credit for tax on *prior transfers,* foreign death taxes, or death taxes on remainders provided in sections 2013, 2014, and 2015 of the Internal Revenue Code.

(Italics ours.) Federal tax credits must be considered to calculate whether an estate is liable for federal estate tax. Because we have determined that Initiative 402 requires state estate tax only from those estates liable for federal estate tax, WAC 458–57–560(6) which does not allow consideration of federal tax credits other than I.R.C. § 2010

658

(1982) conflicts with the initiative's objective and is therefore invalid. We affirm the trial court ruling in favor of the Turner estate.

DOLLIVER, C.J., BRACHTENBACH, DORE, PEARSON, ANDERSEN, CALLOW, and DURHAM, JJ., and HAMILTON, J. Pro Tem., concur.