[No. 74974-4.   En Banc.]
Argued September 30, 2004.     Decided February 3, 2005.

ESTATE OF WYLIE M. HEMPHILL ET AL., *Appellants*, v. THE DEPARTMENT OF REVENUE ET AL., *Respondents*.

FAIRHURST and J.M. JOHNSON, JJ., did not participate in the disposition of this case.

*Raymond H. Siderius, Charles R. Lonergan, Jr.,* and *William E. Wall* (of *Siderius Lonergan & Martin, L.L.P.*); *G. Lawrence Salkield*; and *Orly J. Sorrel* (of *Sorrel & Tall, Inc., P.S.*), for appellants.

*Robert M. McKenna, Attorney General,* and *Donald F. Cofer, Senior Counsel,* and *Debra E. Casparian, Assistant,* for respondents.

*Gary C. Randall* and *Richard P. Algeo* on behalf of National Federation of Independent Business and Washington State Farm Bureau Federation, amici curiae.

¶1 C. JOHNSON, J. — This case involves a challenge to the validity of the Department of Revenue's assessment and calculation of estate taxes under chapter 83.100 RCW. The estates of Wylie M. Hemphill, Wyoma G. Shea, and Morgan J. O'Brien, through their personal representatives, Thomas W. Hemphill, Barbara Sauerbrey, and Nancy O'Brien, respectively (Appellants), represent, in a class action, those appealing a Thurston County Superior Court cross-motion summary judgment order dismissing their claim against the State of Washington Department of Revenue (Department).

¶2 Appellants are requesting a refund of estate taxes paid to the State. Appellants contend any taxes paid should have been calculated under current federal law, the Economic Growth and Tax Relief Reconciliation Act of 2001, (EGTRRA), Pub. L. No. 107-16, 115 Stat. 38 (2001), not under a previous version of federal law as of January 1, 2001. If current federal law is used, the result would be lower state taxes owed or no state taxes owed at all. The class action consists of three subclasses, which are represented by: the Hemphill estate,[1] the O'Brien estate,[2] and

---

[1] The Hemphill estate was valued at over $3.5 million. It filed a federal tax return and argues it was required to pay the Department over $30,000 more in state taxes than the current 2002 federal state credit allowed. Br. of Appellants at 8-9.

[2] The O'Brien estate was valued at just less than $2.5 million. It filed a federal tax return and argues it was required to pay the Department over $30,000 in state

the Shea estate.[3] The Department contends that current statutory language ties Washington estate tax to federal tax law as of January 1, 2001, thereby making all collections proper according to the language of RCW 83.100.200.

¶3 We granted direct review from the trial court. The trial court found that Washington's estate tax law, chapter 83.100 RCW, specifically references and incorporates the Internal Revenue Code as of January 1, 2001. It found this reference establishes that Washington's estate tax does not complement current federal law, but instead ties only to federal law from January 1, 2001. We reverse.

## DISCUSSION

■■■ ¶4 Washington has no inheritance tax. By initiative, the voters repealed the state inheritance tax in 1981. However, like most states, Washington has an estate tax, also called a "death tax." The 1981 initiative[4] was codified at chapter 83.100 RCW, expressly limiting the Washington estate tax to "an amount equal to the federal credit." RCW 83.100.030(1).

¶5 Under this statute, the estate tax is received not as a separate tax but through a tax credit established by the federal code. The credit reduces the estate's total federal estate tax due and "transfers" the amount of the credit to the State. Thus, many states codified their estate tax by equating the state tax to the total credit allowed to them by the federal government. Such a tax is called a "pickup" tax. By 2001, 38 states relied exclusively on a "pickup" tax to

taxes despite not owing any federal tax, due to an unlimited marital deduction. Br. of Appellants at 9.

[3] The Shea estate was valued at around $800,000, was not required to file a federal tax return (according to 2002 federal law exemption amount), and thus was not permitted a federal state tax credit. The Department claims that the estate would have owed federal tax under 2001 federal law and, therefore, the state-imposed tax of over $22,000, which would have been imposed by the State in 2001 via the federal state credit, is appropriate. Br. of Appellants at 9.

[4] Initiative Measure 402 reads: "Shall inheritance and gift taxes be abolished, and state death taxes be restricted to the federal estate tax credit allowed?" *Official Voters Pamphlet, General Election* 6 (Nov. 6, 1981).

receive their estate taxes.[5] In this way, states are able to receive their estate tax while not creating any additional tax burden on the estate.

¶6 In 2001, the legislature enacted revisions to chapter 83.100 RCW that referenced the Internal Revenue Code as "the United States Internal Revenue Code of 1986, as amended or renumbered as of January 1, 2001." RCW 83.100.020(15). The issue in this case arises because the federal code has changed since 2001, and our statute has not matched these changes. Although proposals were presented, the Washington Legislature has not acted to revise our statute since the 2001 revision.[6]

¶7 In 2001, the EGTRRA was enacted by Congress, which ends the federal estate tax and repeals the federal estate tax credit for state estate taxes. The implementation of EGTRRA essentially ends the estate tax revenue sharing between the federal government and states.

¶8 Under EGTRRA, all federal estate tax will be repealed as of 2010. Between 2001 and 2010, the base exemption amount will increase from the prior taxable estate value of $700,000. For example, for decedents dying in 2002, the exemption will be $1 million, and by 2009 will be $3.5 million. Prior to EGTRRA, unless an estate was worth $700,000, no federal taxes were paid. Joel Michael, *A Survey of State Responses to EGTRRA's Estate Tax Changes*, State Tax Notes, May 3, 2004, at 345-46, *available at* http://www.taxanalysts.com (last visited Jan. 28, 2005).

¶9 EGTRRA is also phasing out the state estate tax credit, which will be fully eliminated by January 1, 2005. "[F]or decedents dying in 2002, a 75 percent credit was allowed; in 2003, a 50 percent credit; and in 2004, a 25

---

[5] The 38 states included those with statutes automatically updating with federal tax law and those, like Washington, with statutes based on federal law as of a fixed date. The other 12 states had either a stand-alone inheritance or estate tax, in addition to their "pickup" component. Joel Michael, *A Survey of State Responses to EGTRRA's Estate Tax Changes*, State Tax Notes, May 3, 2004, at 347, *available at* http://www.taxanalysts.com (last visited Jan. 28, 2005).

[6] Proposals for revision have failed, never leaving committee.

percent credit." Michael, *supra*, at 346. These credits are different from those recognized under the 2001 version of the Internal Revenue Code. All parties represented as estates in this case died in 2002, after the implementation of EGTRRA.

¶10 We have to decide whether the legislature's inaction in not revising the statutory definitional references has changed the character of our estate tax, which has been a "pickup" tax based on current federal law. We hold it has not changed.

¶11 The two statutes at issue are RCW 83.100.030, which at subsection (1) declares a "[state estate] tax in an amount equal to the federal credit is imposed on every transfer of property of a resident," and RCW 83.100.020, which defines a "[f]ederal credit" as based on "the United States Internal Revenue Code of 1986, as amended or renumbered as of January 1, 2001." RCW 83.100.020(3), (15).

¶12 The Department argues that in following the current definitional language of the section, the tax scheme imposes an estate tax equal to the federal credit as of January 1, 2001, prior to the implementation of EGTRRA. Appellants contend that the operative meaning of RCW 83.100.030 asserts a legislative intent to maintain a state estate tax scheme that does not exceed current federal credits.

¶13 We dealt with a similar issue in *Estate of Turner v. Dep't of Revenue*, 106 Wn.2d 649, 724 P.2d 1013 (1986). In that case, we recognized that Washington had a "pickup" tax and held "that Washington estate tax is limited to those estates which are required to pay federal tax." *Estate of Turner*, 106 Wn.2d at 655.

¶14 The Department's argument in *Estate of Turner* was based on the then-existing definition of "federal credit" provided in RCW 83.100.020(3) as "the credit for estate taxes allowed by section 2011." The Turner estate had qualified for additional credits under the then-existing

sections 2010 and 2013 of the Internal Revenue Code. The Department argued that since our statute specified only section 2011 credits, other federal credits could not be applied to calculate the state tax due. We rejected the Department's argument.

¶15 We also determined that based on the 1981 initiative, Washington had abolished the state inheritance tax and adopted a "pickup" tax. In part, we relied on the official explanation of the initiative that stated, " '*Only estates liable for federal estate tax would be subject to tax under the initiative . . . .* ' " *Estate of Turner*, 106 Wn.2d at 654 (quoting *Official Voters Pamphlet, General Election* 6 (Nov. 6, 1981)). We stated that "pickup" statutes " 'do not increase the amount of the combined state and federal tax liability, but merely authorize the state to share in the proceeds of the federal estate tax to the extent of the allowable credit . . . .' " *Estate of Turner*, 106 Wn.2d at 655 (quoting 42 AM. JUR. 2D *Inheritance, Estate, and Gift Taxes* § 244, at 452 (1969)).

¶16 We concluded that when an estate has no federal estate tax, there is no obligation to pay any state estate tax. In doing so, we expressly rejected the Department's fundamental argument that our statute imposes an independently operating Washington estate tax.

¶17 If we now adopt the Department's rationale that RCW 83.100.020 calculates taxes based on a certain date, then when the federal estate tax is completely abolished in 2010, the Department would eventually collect all of its state estate taxes as a separate and independent tax. In the subclass represented by the Shea estate, for example, the Department maintains that an estate not obligated to file a federal form must obtain a newly created state estate tax form, file taxes, and pay completely independent taxes. Such calculations are contrary to what we held in *Estate of Turner* and contrary to RCW 83.100.030. Any tax obligation which exceeds the applicable federal allowances and requirements would be inconsistent with the recognized intent of the voter initiative.

¶18 Until or unless the legislature revises RCW 83.100.030 to specifically and expressly create a stand-alone estate or inheritance tax, RCW 83.100.030 remains as a "pickup" tax, in which all state estate tax due must be fully reimbursed as a current federal credit. When no credit exists or where the credit is being phased out, as here, RCW 83.100.030 similarly calls for a reduction in the state allowed credit. Otherwise, total "tax" obligations would exceed federal obligations.

¶19 The Department contends that "the Legislature substantially amended [chapter 83.100 RCW] when it enacted the Estate and Transfer Tax Act of 1988," thereby decoupling the tax scheme from its prior classification interpreted in *Estate of Turner*. Br. of Resp'ts at 8. This argument is not persuasive. We find no indication of this in the legislative history, and the Department has not identified where the legislature changed the character of the tax and created an independently operating Washington estate tax.

¶20 These statutory revisions simply began a trend by the legislature to tie the statute to a specific federal tax code, as we have held is constitutionally required. CONST. art. II, § 1; *Diversified Inv. P'ship v. Dep't of Soc. & Health Servs.*, 113 Wn.2d 19, 24-25, 775 P.2d 947 (1989). These periodic revisions ended with the January 1, 2001, reference.

¶21 The estate tax scheme in Washington as currently written, though not automatically adopting specific federal law, must be administered complementary to federal law to guarantee that a separate state tax does not burden estates. *See Estate of Turner*, 106 Wn.2d at 653-54. A new tax burden can be created only by law that states such a purpose. CONST. art. VII, § 5.[7]

¶22 By taking no action, the legislature has created an internal conflict within the statute. Such a conflict can be

---

[7] "No tax shall be levied except in pursuance of law; and every law imposing a tax shall state distinctly the object of the same to which only it shall be applied." CONST. art. VII, § 5.

resolved only through a clear directive by the legislature. The statute cannot be so ambiguous as to say, "[n]o Washington return need be filed if no federal return is required," while also referencing an old federal code that requires Washington returns when no federal return is filed. RCW 83.100.050(1). The same incongruity exists when dealing with state tax burdens that exceed the current federal credit. RCW 83.100.030.

¶23 Ambiguities in taxing statutes are construed "most strongly against the government and in favor of the taxpayer." *Dep't of Revenue v. Hoppe*, 82 Wn.2d 549, 552, 512 P.2d 1094 (1973). In this case, the original initiative creating this tax statute, our prior interpretation of the statute, and the current wording of the statute show that Washington still has a "pickup" tax based on current federal law. Any amount of a state estate tax not fully absorbed by a current federal credit is an invalid independent tax.

## CONCLUSION

¶24 Accordingly, Appellants are due a refund of estate taxes collected by the Department since January 1, 2002.

¶25 The decision of the trial court is reversed and remanded.

ALEXANDER, C.J.; MADSEN, SANDERS, BRIDGE, CHAMBERS, and OWENS, JJ.; and BRIDGEWATER and IRELAND, JJ. Pro Tem., concur.