[No. 4431–II.   Division Two.   June 23, 1980.]

*In the Matter of the Personal Restraint of*
OSCAR BONDS, JR., *Petitioner.*

*Oscar Bonds, Jr.,* pro se.

*Slade Gorton, Attorney General,* and *Nate D. Mannakee, Assistant,* for respondent.

REED, C.J.—Oscar Bonds, Jr., has filed a personal restraint petition in which he seeks reinstatement of his parole. The petition was referred to the undersigned panel of judges for determination pursuant to RAP 16.11(b). We deny the petition for the reasons discussed below.

The facts are these. In 1971, petitioner was sentenced to a 20–year maximum term upon his conviction for first–degree forgery in Pierce County. The Board of Prison Terms and Paroles paroled him on June 21, 1974. In March 1979, Bonds was charged with the crimes of possession of stolen property, possession of a controlled substance, and being a felon in possession of a firearm. On March 9, 1979, his parole officer, acting pursuant to RCW 9.95.120 and RCW 72.04A.090, served him with an order suspending his parole and ordering his detention pending a determination by the parole board whether to revoke parole. On March 14, 1979, petitioner acknowledged receipt of a written statement of his rights pertaining to an on–site revocation hearing. Promptly on March 21, the parole board conducted a preliminary administrative review to assess probable cause to detain Bonds further pending a revocation hearing. Such a preliminary probable cause determination is required by *Morrissey v. Brewer,* 408 U.S. 471, 33 L. Ed. 2d 484, 92 S. Ct. 2593 (1972).

The parole board found probable cause to conduct a revocation hearing and gave notice of that fact and of the date of the hearing—April 6, 1979—to James Caraher, petitioner's attorney. Mr. Caraher, with petitioner's consent, requested a continuance of the hearing until the trial date of May 2, 1979 on the underlying criminal charges. The parole board continued the hearing "pending outcome of local prosecution." Upon notification that the criminal charges were dismissed in court, the parole board on June 8, 1979 informed petitioner through his attorney that a revocation hearing would occur on June 22, 1979.

Petitioner and his attorney appeared at the revocation hearing. The parole board revoked his parole upon a finding that petitioner had committed all three of the criminal violations. When Bonds returned to the institution, as required by RCW 9.95.125 the parole board fixed a new minimum sentence of 36 months for him.

Petitioner's first complaint is that he was not given a preliminary probable cause hearing or a statement of the evidence relied upon at a preliminary probable cause hearing. This was a violation of the literal requirements of *Morrissey* that the parolee must be given (1) advance notice of such a hearing and its purpose; (2) advance notice of the alleged violations of parole; (3) an opportunity to speak and present witnesses on his own behalf. 408 U.S. at 486–87. In *State v. Myers,* 86 Wn.2d 419, 545 P.2d 538 (1976), the Supreme Court held, in the closely analogous context of probation revocation, that the failure even to conduct a preliminary hearing does not deny due process of law if the final revocation hearing itself is held promptly after original detention. In this case, the on–site revocation hearing would have been held within 30 days of the detention, had petitioner not sought a continuance. We find no reversible error. *See In re Knoke,* 17 Wn. App. 874, 565 P.2d 1187 (1977); *State v. Grimm,* 17 Wn. App. 683, 564 P.2d 839 (1977).

Petitioner next contends he was not given a statement of the parole board's reasons for revoking parole. Such a statement, required by *Morrissey v. Brewer,* 408 U.S. at 489, was prepared on June 22, 1979 by board member Eugene Corr. The board contradicts petitioner by contending he was served with a copy of the statement, but has not provided any verification of that fact. Petitioner has shown no prejudice, assuming he did not receive the statement of reasons. Therefore, rather than remand this petition for an evidentiary hearing into this disputed question of fact, we direct that the board now serve petitioner with a copy of its June 22, 1979 findings and conclusions and provide this court with evidence of service.

Petitioner's final arguments involve the parole board's setting of a new minimum term following revocation of his parole. He contends (1) the board violated its own guidelines when it set the minimum at 36 months, and (2) the board failed to advise him of adverse information in his file prior to setting the term, as required by *In re Sinka,* 92 Wn.2d 555, 599 P.2d 1275 (1979).

We can resolve the first of these issues summarily. The parole board's response to this petition shows that the new minimum term of 36 months was squarely within the board's guideline range of 30 to 42 months. Moreover, a prisoner has no substantive right to a sentence of shorter duration than the maximum allowed by statute. *Lindsey v. Superior Court,* 33 Wn.2d 94, 204 P.2d 482 (1949); *In re LaLande,* 21 Wn. App. 378, 585 P.2d 180 (1978). Parole before the expiration of a convict's statutory maximum terms is "not a right but a mere privilege conferred as an act of grace by the state through its own administrative agency." *January v. Porter,* 75 Wn.2d 768, 774, 453 P.2d 876 (1969). *See also* RCW 9.95.100, .110.

In his remaining argument, petitioner essentially seeks to apply *In re Sinka* retroactively. *Sinka* held that the parole board must advise the inmate of adverse information in his parole file when setting a minimum term, so that the inmate can rebut or explain adverse file information much in the manner of the opportunity given to defendants to rebut a presentence report to superior court. *Sinka* does not specify whether it is intended to apply to convicts, like petitioner, whose minimum terms were fixed before *Sinka* was decided on September 6, 1979. The opinion contains a hint that it is to be prospective only, in that the court recommends a general procedure for disclosure of inmate records and recognizes the board's "broad discretion" to implement such a procedure.

In deciding whether such a decision should be given retroactive effect, we look to the guidelines articulated in *Brumley v. Charles R. Denney Juvenile Center,* 77 Wn.2d 702, 707, 466 P.2d 481 (1970): (1) The purpose of the new

rule, (2) the extent to which law enforcement agencies and courts have justifiably relied upon the former rule, and (3) the effect of retroactive application upon the administration of justice. *Accord, Wood v. Morris,* 87 Wn.2d 501, 514, 554 P.2d 1032 (1976). *See also State v. Barton,* 93 Wn.2d 615, 618, 611 P.2d 789 (1980) (Utter, C.J., concurring); *In re Myers,* 91 Wn.2d 120, 124–25, 587 P.2d 532 (1978).

▇ The purpose of the rule announced in *Sinka* is threefold: (a) It may expose inaccuracies and prevent the parole board from considering erroneous information in the inmate's file; (b) it will allow the inmate the opportunity to rebut or explain adverse information; and (c) it will promote a more open, fair, accurate, and rational decision-making process. *In re Sinka,* 92 Wn.2d at 568. These are salutary objectives, but it does not appear the parole board's former practice of withholding some adverse information from inmates had resulted in the board's reliance upon inaccurate information in any significant number of cases.

As for the second factor in the *Brumley* analysis, we repeat the *Sinka* court's observation that "the setting of a minimum term is not part of a criminal prosecution and the full panoply of rights due a defendant in such a proceeding does not apply to a minimum term setting." 92 Wn.2d at 566. With this in mind, we believe the parole board was entitled to assume that due process was satisfied by its former procedure of affording inmates an opportunity to be heard, employing regular guidelines for establishing minimum terms, and stating reasons for the setting of terms outside the guidelines. *Sinka* has added a new procedural requirement, which the parole board should not be held to have foreseen as necessary to due process in the context of setting minimum terms.

Finally, and most importantly, the effect of retroactivity of the disclosure of information requirement would be staggering. The parole board would be required to reopen the

files of every inmate serving a fixed minimum term in the state's penal institutions, determine the extent of qualifying adverse information that was not disclosed to each inmate, and conduct a new proceeding of some sort in which each inmate would be so informed. As reported in *Sinka,* 92 Wn.2d at 568–69, the board fixed 3,038 minimum terms in 1977 and 1,730 such terms in 1978. Obviously, many if not most of these terms are still being served, as well as those fixed in 1979 before *Sinka* was decided. Particularly in the absence of any reason to believe that reliance on erroneous information about inmates was a significant problem prior to *Sinka,* we are persuaded that the burden on the Board of Prison Terms and Paroles would be grossly disproportionate to the benefits achieved. We decline to give *Sinka* retroactive application.

The petition is denied.

PETRIE and PETRICH, JJ., concur.