[No. 28557-2-I.   Division One.   December 31, 1992.]

*In the Matter of the Personal Restraint of*
WALTER BIBLE, *Petitioner.*

*Barton L. Jones,* for petitioner.

*Kenneth O. Eikenberry, Attorney General,* and *Thomas J. Young, Assistant,* for respondent.

GROSSE, C.J. — Petitioner Walter Bible contends that his restraint in the Washington State Penitentiary by the Department of Corrections and the Indeterminate Sentence Review Board (Board) is illegal. He maintains that the Board shifted his "time start" to an SRA (Sentencing Reform Act of 1981) sentence which has since expired and that, as a result, the Board no longer has jurisdiction to hold him in prison.

Bible is in the custody of the Department of Corrections pursuant to a judgment and sentence dated January 10, 1979, and a warrant of commitment dated November 19, 1980. He was convicted in King County of two counts of first degree robbery while armed with a deadly weapon and sentenced to 20 years' imprisonment on each count. The court ordered the sentences to run concurrently. His maximum sentence on this pre-SRA sentence expires in 1998.

While on parole from his robbery convictions, Bible was convicted of second degree manslaughter and sentenced to 41 months' imprisonment. As a result of his manslaughter conviction, the Board revoked Bible's parole on his robbery convictions. In February 1988, the Board gave him a new minimum term of 6 months on the pre-SRA robbery convictions.

In April 1988, the Board shifted Bible's "time start" on the pre-SRA sentence to the manslaughter conviction,[1] thus permitting him to begin serving his term for manslaughter under

---

[1] Bible argues that the Board "paroled" him to his SRA sentence. The term is misleading in this context because what is at issue is not the Board's decision to parole him, but rather its decision effectively to cut short his minimum term on his pre-SRA sentence, permitting him to begin serving time on his SRA term. Bible's sentence on the SRA cause would not automatically have started running from his date of conviction on that cause because RCW 9.94A.400(2) specifies that "[w]henever a person while under sentence of felony commits another felony and is sentenced to another term of confinement, the latter term shall not begin until expiration of all prior terms." In principle, therefore, Bible might not have started serving his SRA term until the expiration of his pre-SRA maximum term in 1998.

the SRA. In August 1989, Bible submitted a parole plan to the Board for approval. The Board denied the plan because it called for Bible to parole to the home of his brother who could not provide a permanent residence and had no income. At that time the Board noted that Bible could be paroled nunc pro tunc at the time an acceptable plan was received. In February 1990, the Board denied Bible's second parole plan for the same reason. In May 1990, Bible submitted a third parole plan, which the Board approved.

On June 20, 1990, Bible received a prison infraction for fighting with an inmate. As a result, his parole was canceled and the Board scheduled a parole hearing. In August 1990, the Department of Corrections submitted a report to the Board regarding Bible's prospects for success on parole, concluding that his prospects for rehabilitation were poor. On August 21, 1990, Bible received another infraction for possession of narcotics and a syringe. On December 5, 1990, he received another for threatening, strong-arming, and assaulting other inmates.

On March 4, 1991, the Board held a parole hearing to reconsider parole for Bible in light of his recent infractions. The Board then withdrew its authorization of parole, explaining that it had agreed to parole him to the SRA cause nunc pro tunc once an acceptable plan was received. It indicated that the previously approved parole plan was no longer acceptable, because Interaction Transition House would not accept Bible in light of his recent infractions. The Board gave Bible a choice between being paroled nunc pro tunc and having a parole revocation hearing scheduled immediately, or not being paroled and having a disciplinary hearing scheduled instead.

The Board presented the choice to Bible on March 6, 1991. Bible refused to sign the order of parole. Consequently, the Board scheduled a disciplinary hearing, where it found Bible guilty of some of the infractions charged against him, and added 24 months to his minimum term. The Board noted that Bible's infractions involved violent circumstances and possession of drugs.

Bible contends that the Board's act of shifting his "time start" to his SRA charge divested the Board of jurisdiction, rendering his imprisonment beyond the expiration of his SRA sentence illegal. He relies on *St. Peter v. Rhay*, 56 Wn.2d 297, 352 P.2d 806 (1960) for the proposition that he is no longer being held under a valid warrant of commitment. *Rhay* is inapposite. There, the Washington Supreme Court held that because there had been a lapse between the expiration of petitioner's first term and the extension of his minimum term, the petitioner was not being held pursuant to a valid order. Unlike Rhay, whose second term expired *before* his parole was revoked, Bible's parole was revoked on June 20, 1990, *i.e.*, *during* the period of his term for the second offense, which would have expired no earlier than approximately March 1991.[2] Because Bible's maximum term on the initial robbery conviction expires in 1998, and because his parole was revoked before the expiration of his second term, the Board continues to have jurisdiction over him, potentially as late as 1998.

Bible's argument assumes that the Board's act of shifting his time start to the manslaughter charge divested the Board of jurisdiction, transferring that jurisdiction to the SRA. This assumption permits him to argue that at the expiration of the SRA term for manslaughter, the Board no longer possessed jurisdiction. That characterization of the effect of the Board's action is inaccurate. The Washington Court of Appeals (Division Three) has recently explained:

> A person judicially sentenced to confinement remains in custody until the maximum term for which he has been sentenced expires. *January v. Porter*, 75 Wn.2d 768, 776-77, 453

---

[2] Bible's brief contains an inaccuracy. He asserts that he was "paroled" from the robbery to the manslaughter cause on *November 9, 1987*. In fact, that occurred on *April 21, 1988*. April 21, 1988, is therefore the date from which his sentence (41 months - 172 days time credit) began to run. The term expired approximately in March 1991, well after the Board revoked his parole on June 29, 1990. Even running the SRA term from Bible's inaccurate date would not render *Rhay* apposite: Had Bible's SRA sentence begun running on November 9, 1987, it would have expired approximately in October 1990, still after the Board revoked his parole on June 29, 1990.

P.2d 876 (1969). His sentence continues to run notwithstanding his parole. *State v. Jennings*, 45 Wn. App. 858, 860, 728 P.2d 1064 (1986). Once imposed, a sentence is terminated only by absolute pardon from the Governor, death of the person sentenced, or expiration of the maximum sentence. *Mason v. Cranor*, 42 Wn.2d 610, 615, 257 P.2d 211, *cert. denied*, 346 U.S. 901, 349 U.S. 957 (1953). The Board has the authority to order confinement of a prisoner for the maximum term of his sentence. *Mason v. Cranor, supra* at 615.

*In re Paschke*, 61 Wn. App. 591, 595, 811 P.2d 694 (1991).

■ Not only does the Board have authority to order confinement until the maximum sentence expires, it has an affirmative obligation under RCW 9.95.100 not to release an inmate unless he is an appropriate candidate for parole. RCW 9.95.100 reads in pertinent part:

> The board *shall not*, however, *until his maximum term expires*, release a prisoner, *unless* in its opinion his rehabilitation has been complete and he is a fit subject for release.

(Italics ours.) Laws of 1955, ch. 133, § 11. The Board is thus statutorily *prohibited* from releasing a person unless he is a fit subject for release and has been completely rehabilitated. We note in this regard that the Washington Supreme Court has explicitly recognized that "lack of rehabilitation" may be considered by the Board in setting a new minimum term. *In re Locklear*, 118 Wn.2d 409, 415, 823 P.2d 1078 (1992).

Here, between the time the Board initially authorized parole on September 3, 1989, and his release, Bible committed serious prison infractions. The record indicates that the Board deemed these infractions incompatible with its earlier conclusion that he had been rehabilitated and was a fit subject for release.

■■ Bible argues that the Board could no longer reconsider its decision because the parole decision became final when it was initially rendered in September. That contention has little merit. The Board's decision itself explicitly makes the grant of parole contingent on the submission by Bible of an acceptable plan:

> It would appear that Mr. Bible needs to be actually paroled to his sentence reform act (SRA) which runs consecutive to the PV [parole violation]. This *could be done nunc pro tunc at the time an acceptable plan is given.*

(Italics ours.) Brief of Petitioner exhibit D, Decisions and Reasons (Aug. 3, 1989). Moreover, Bible had not signed the parole order. He now maintains that his signature was inconsequential to making the Board's action effective because RCW 9.95 does not require a parolee to sign the order. This argument is persuasive only to the extent we are willing to overlook the parole statute as a whole. A court in construing a statute must read it in its entirety, not piecemeal, *State v. Parker*, 97 Wn.2d 737, 649 P.2d 637 (1982), and interpret the various provisions of the statute in light of one another. *See Prince v. Savage*, 29 Wn. App. 201, 627 P.2d 996, *review denied*, 96 Wn.2d 1002 (1981).

■ RCW 9.95.110 enables the Board to establish "rules and regulations" under which a convicted person may be released from confinement. One of those rules, WAC 381-40-110(3), states:

> The order of parole in each case will be signed by the members of the board who reviewed and approved the plan or who conducted the meeting which resulted in approval for parole. The order of parole will be served in person on the inmate the day he or she is scheduled for release. The inmate's signature on the order of parole will be witnessed and the witness will also sign the order of parole in the space provided on the document. *An inmate will not be released unless he or she has signed the valid order of parole in the presence of a witness. In cases where the inmate refuses to sign the order of parole, the order of parole will be returned to the board with a written explanation of the refusal to sign and the parole will be cancelled.*

(Italics ours.) The very form Bible contends did not require his signature to acquire effectiveness was one in which he would have agreed to observe the terms under which his parole was granted.

Bible also contends that the Board cannot rely on his failure to submit an adequate parole plan because RCW 9.95.100 does not include any such requirement. He asserts in effect that the parole decision cannot be made conditional on the submission of an appropriate parole plan. The opposite is true. The requirement that parole be granted pursuant to an acceptable plan also arises from RCW 9.95.110,

which authorizes the Board to establish rules and regulations under which a convicted person may be released. One of these rules is that the inmate submit an acceptable plan. WAC 381-40-100 provides in pertinent part:

> Upon completion of the minimum term, an inmate is eligible to be considered for parole when he or she presents an acceptable parole plan unless the board determines that the inmate is not parolable pursuant to RCW 9.95.100, and presents an unacceptable risk to the safety of the community.
> An acceptable parole plan must include:
> (1) Legal means of support (family, friends, job, school, grant, etc.);
> (2) Suitable residence;
> (3) Agreement to comply with standard or special conditions of parole, if deemed necessary by the board, to aid reintegration into the community and reduce the potential to reoffend.

In sum, because the decision to parole Bible at the expiration of his SRA sentence was never actually effectuated, and because under these facts the parole board retains jurisdiction over him until the expiration of his maximum term in 1998, Bible's ultimate assertion that "[o]nce parole has been granted, due process rights require certain steps be taken before that parole is revoked" is inapt here. Brief of Petitioner, at 7 (citing *Monohan v. Burdman*, 84 Wn.2d 922, 530 P.2d 334 (1975)). That is particularly true because parole is a privilege, not a right, *State v. Fain*, 94 Wn.2d 387, 617 P.2d 720 (1980); *see In re Bonds*, 26 Wn. App. 526, 613 P.2d 1196 (1980), and because the standard that the parolee be a fit subject for release under RCW 9.95.100 is not unconstitutionally vague. *In re Ayers*, 105 Wn.2d 161, 163-64, 713 P.2d 88 (1986).

The decision of the Indeterminate Sentence Review Board is affirmed. Bible's personal restraint petition is denied.

COLEMAN and PEKELIS, JJ., concur.

Reconsideration denied April 19, 1993.