[No. 62771-1.    En Banc.    August 10, 1995.]

WESTERN PETROLEUM IMPORTERS, INC., ET AL.,
*Respondents*, v. KATHERINE BAROS FRIEDT, ET AL.,
*Appellants*.

*Christine O. Gregoire, Attorney General,* and *William B. Collins, Linda M. Moran,* and *Karl F. Hausmann, Assistants,* for appellants.

*Carney, Badley, Smith & Spellman* by *James E. Lobsenz,* for respondents.

Guy, J. — This appeal involves the interpretation and

application of section 13 of the taxpayer protection act, Laws of 1994, ch. 2, p. 18 (Initiative 601). Section 13 expired on July 1, 1995, just three days after we heard oral argument in the case, and the same day the key provisions of Initiative 601 became effective.

At issue is whether the Legislature's repeal of a tax exemption and tax credit relating to gasohol production and distribution is a "raise" in existing taxes that is subject to the terms of section 13 and, consequently, must be approved by a majority of the voters at a general election before it is effective. We hold that section 13 does not apply in this instance.

The Plaintiffs are two corporations which sell alcohol used in the production of gasohol, a motor vehicle fuel, and a King County resident who purchases gasohol and other motor vehicle fuel for his automobile. The Plaintiffs brought this action to challenge the validity of Engrossed Substitute House Bill 2326, § 1, now Laws of 1994, ch. 225, § 1, p. 1245 (hereafter ESHB 2326) (repealing the tax exemption and tax credit available to certain producers and distributors of alcohol used in gasohol). Plaintiffs also sought an order enjoining the Defendants, the Department of Licensing and its director, Katherine Baros Friedt, from enforcing the law.[1]

The facts in this case are undisputed and the only question to be resolved is one of law. Accordingly, both parties moved for summary judgment.

The trial court granted the Plaintiffs' motion, declaring section 1 of ESHB 2326 null and void and enjoining its enforcement until such time as it might be approved by the voters of the state of Washington.

The Department appealed directly to this court and we retained jurisdiction.

---

[1] The individual plaintiff and the corporations are referred to collectively herein as "Plaintiffs"; Defendants are referred to collectively as "Department."

We reverse and remand for entry of an order granting the Department's motion for summary judgment.

## ISSUE

Does section 13 of Initiative 601, requiring voter approval before the Legislature may raise existing taxes, apply to the repeal of a tax exemption and tax credit relating to the distribution of alcohol used in the production of a motor vehicle fuel?

## ANALYSIS

This case involves only one section—section 13—of Initiative 601. Section 13 is one of two sections of the initiative which went into effect in December 1993, one month after Initiative 601 was approved by the voters.

Section 13 provides:

> (1) After [December 2, 1993], the state *may raise existing taxes*, impose new taxes as authorized by law, or make revenue-neutral tax shifts only with approval of a majority of the voters at a November general election. The requirement for a vote at a November general election is in addition to any other requirements established by law.
>
> (2) This section expires on July 1, 1995.

(Italics ours.) Laws of 1994, ch. 2, § 13, p. 23-24; RCW 43.135.904.

The narrow issue presented by this appeal is whether the limitation imposed by section 13 on any legislative attempt to "raise existing taxes" applies to the Legislature's repeal of a tax preference granted to certain producers and distributors of alcohol used in the manufacture of gasohol.

■■■ In determining the proper construction of section 13, we apply general rules of statutory construction. *Hi-Starr, Inc. v. Liquor Control Bd.*, 106 Wn.2d 455, 460, 722 P.2d 808 (1986) (rules of statutory construction apply to initiatives as well as to legislative enactments). Thus, where the language of the enactment is plain, unambigu-

ous, and well understood according to its natural and ordinary sense and meaning, the enactment is not subject to judicial interpretation. *Tacoma v. State,* 117 Wn.2d 348, 356, 816 P.2d 7 (1991) (citing *Seattle v. Ross,* 54 Wn.2d 655, 658, 344 P.2d 216 (1959)). The intent behind the language of an enactment becomes relevant only if there is some ambiguity in that language. *Spokane v. Taxpayers of Spokane,* 111 Wn.2d 91, 98, 758 P.2d 480 (1988). In construing the meaning of an initiative, the language of the enactment is to be read as the average informed lay voter would read it. *Estate of Turner v. Department of Revenue,* 106 Wn.2d 649, 654, 724 P.2d 1013 (1986).

■ We hold the words "raise existing taxes" as contained in section 13 are plain, unambiguous, and well understood according to their natural and ordinary meaning. In its ordinary sense, the phrase "raise existing taxes" means to increase the existing statutory *rate* of taxation.

The motor vehicle fuel tax rate which existed when section 13 became effective in December 1993 is set forth in RCW 82.36, the motor vehicle fuel tax statute. That statute provides in part:

> **Tax imposed—Rate to be computed—Allocation of proceeds.** Every distributor shall pay, in addition to any other taxes provided by law, an excise tax to the director at a rate computed in the manner provided in RCW 82.36.025 for each gallon of motor vehicle fuel sold, distributed, or used by him in the state as well as on each gallon upon which he has assumed liability for payment of the tax under the provisions of RCW 82.36.100[.]

RCW 82.36.020.

The rate of tax imposed is set forth in RCW 82.36.025, which states in part:

> **State-wide motor vehicle fuel taxes.** The motor vehicle fuel tax rate shall be computed as the sum of the tax rate provided in subsection (1) of this section and the additional tax rates provided in subsections (2) through (5) of this section.

The existing motor vehicle fuel tax, as calculated under RCW 82.36.025(1) through (5), is approximately 23 cents per gallon.

In order to encourage the use of gasohol and to aid in-state producers of alcohol used in the production of gaso-hol, the Legislature created a tax preference, excusing certain producers and distributors of alcohol used in gaso-hol from paying the full motor vehicle fuel tax. The tax preference was in the form of an exemption and credit and was set forth in former RCW 82.36.2251[2] as follows:

(1) Alcohol of any proof that is sold in this state for use as fuel in motor vehicles, farm implements and machines, or implements of husbandry is exempt from the motor vehicle fuel tax under this chapter if such alcohol was manufactured by a company that has been verified by the department [of licensing] as having sold less than eight million gallons of alcohol for use as motor fuel in the prior calendar year.

(2) In addition, a tax credit of sixty percent of the tax rate imposed by RCW 82.36.025 shall be given for every gal-lon of alcohol receiving the exemption under subsection (1) of this section and used in an alcohol-gasoline blend which contains at least nine and one-half percent or more by vol-ume of alcohol: PROVIDED, That in no case may the tax credit claimed be greater than the tax due on the gasoline portion of the blended fuel.

(3) This section shall expire on December 31, 1999.

The effect of former RCW 82.36.2251 was to reduce the actual fuel tax paid by certain producers and distributors of gasohol from the 23 cents per gallon fuel tax imposed on gasoline to approximately 19 cents per gallon.

Section 1 of ESHB 2326 repealed RCW 82.36.2251.

Plaintiffs claim that the amount of taxes due to the State as motor vehicle fuel taxes has increased due to the repeal of RCW 82.36.2251. Because individual tax pay-ments and the State's tax revenue from those payments have increased, the Plaintiffs argue that the existing mo-tor vehicle fuel tax has been raised in violation of section 13.

■ However, taxes are not "raised" because the amount

---

[2]After the enactment of ESHB 2326, § 1, RCW 82.36.2251 was deleted from the official publication of the Revised Code of Washington. The former statute is contained in the 1993 Supplement to the 1992 edition of the code.

of tax that an individual taxpayer pays or that the State receives may increase from one year to the next. This state's motor vehicle fuel tax is set forth in RCW 82.36.025, and taxpayer liability is determined according to that statute. A *tax credit* is an amount subtracted from that liability, reducing the amount that certain taxpayers must pay. BLACK's LAW DICTIONARY 1461 (6th ed. 1990). A *tax exemption* relieves certain taxpayers from payment, in whole or in part, of taxes due. *Shepard's Tax Dictionary* 195 (1990). Both are considered tax preferences, RCW 43.136.020, and are used in reducing a tax liability owed and in arriving at the sum that an individual taxpayer must pay. Both are computed by first looking at the existing tax liability.

In enacting ESHB 2326, the Legislature made a policy decision that these tax preferences were no longer efficient or equitable tools for achieving legislative objectives. The Legislature determined that because the public interest was no longer being served by the continued existence of the gasohol tax credit and tax exemption, these particular tax preferences should be terminated. *See* RCW 43.136.010 ("The legislature finds that unless it can be demonstrated that the public interest is served by the continued existence of tax preferences, they should be terminated or modified.").[3]

The effect of ESHB 2326 is to require the producers and

---

[3]The Legislature explained its reasons for repealing the tax credit and tax exemption involved here when it amended ESHB 2326 during the 1995 Legislative session. The amending legislation, Engrossed Substitute House Bill 2090, Laws of 1995, ch. 364, § 1, p. 1699, states in part:

The gasohol exemption and credit was created in 1980 to help in-state producers of alcohol. The legislature finds that, for the following reasons, the gasohol exemption and credit granted to motor fuel distributors is not in the best interest of the citizens of the state of Washington:

(1) The federal Clean Air Act requires the use of gasohol or other oxygenated fuels in King, Pierce, Snohomish, Clark, and Spokane counties during fall and winter months, thereby diminishing the need to provide incentives to alcohol producers;

(2) The federal government also provides a fuel tax exemption of up to 5.4 cents per gallon of gasohol;

distributors of alcohol used in gasohol to pay the full existing motor vehicle fuel tax. Although this requirement has an effect of increasing the amount certain individual taxpayers will pay, it does not constitute a raise in the existing motor vehicle fuel tax set forth in RCW 82.36.025.

Because it is not a raise in the existing motor vehicle fuel tax, it is not subject to the provisions of section 13.

▬▬▬ Additionally, we hold that section 13 of Initiative 601 was enacted as an amendment or addition to the existing law which limited the Legislature's authority to raise state tax revenues. As such, the section must be construed as part of the existing statute. That statute does not apply to legislation affecting motor vehicle fuel taxes.

Plaintiffs urge this court to interpret the two sentences of section 13(1) as a law unto itself, without reference to existing laws on the same subject and without reference to the terms of Initiative 601. We reject Plaintiffs' construction of the law in this regard.

Unlike the remainder of Initiative 601, section 13 and section 8 became effective immediately. Section 8 is a permanent provision and has been codified as RCW 43.135.055. Section 13 is temporary and was not codified.[4] However, like the operative provisions of Initiative 601 itself, section 13 became part of RCW 43.135,[5] the only law existing at the time Initiative 601 was passed that places any limits on the Legislature's ability to increase state tax revenue.

---

(3)  If continued, the state exemption will cost the state about thirty million dollars per year, the equivalent of a one-cent gasoline tax;

(4)  Only three of the seventeen alcohol producers certified to benefit from the exemption in 1993 are located in Washington;

(5)  Over ninety percent of the alcohol qualifying for the exemption is provided by out-of-state firms, including several from outside the country;

(6)  Gas tax revenue lost because of the exemption is badly needed for state, city, and county transportation projects.

[4]Section 13 is included within RCW 43.135 as a code revisor's note.

[5]The former provisions of RCW 43.135 were replaced by the provisions of Initiative 601 on July 1, 1995. The principal sections of Initiative 601 are now codified in RCW 43.135.

When construing a statute we must read it in its entirety, not piecemeal, and interpret the various provisions of the statute in light of one another. *In re Bible,* 69 Wn. App. 394, 399, 845 P.2d 1336 (1992) (citing *State v. Parker,* 97 Wn.2d 737, 649 P.2d 637 (1982)). "An original act and an amendment to it should be read and construed as one law passed at the same time." *Amburn v. Daly,* 81 Wn.2d 241, 246, 501 P.2d 178 (1972).

In construing section 13 we therefore consider the provision in the context of former RCW 43.135, the law to which it relates.

Former RCW 43.135 limited the Legislature's ability to increase state tax revenues. Former RCW 43.135.010(3)(a); former RCW 43.135.030(1). "State tax revenue" was defined in the statute as "all state moneys received in the treasury from every source *except* those revenues excluded for [sic] the term 'general state revenues' by Article VIII, section (1)(c) of the state Constitution." (Italics ours.) Former RCW 43.135.020(1).

The state constitution excludes from the term "general state revenues" moneys which are paid into and received from trust funds, including taxes levied for specific purposes. Const. art. VIII, § 1(c)(4). Motor vehicle fuel taxes are required to be placed in a special fund and to be used exclusively for highway purposes. Const. art. II, § 40. Thus the limitation on increases in state tax revenue established by former RCW 43.135, including the limitation contained in section 13 of Initiative 601, does not apply to motor vehicle fuel taxes.[6]

---

[6]The Department suggests that we not limit our holding here to section 13 but hold that the limitations imposed upon the Legislature in sections of Initiative 601 that went into effect July 1, 1995, are likewise limited to the general fund. We have determined that the Plaintiffs involved in this case do not have a sufficient interest in the interpretation of the initiative to effectively brief and argue this issue, and we therefore will not decide the issue in this case. The Plaintiffs are (1) a Nevada corporation which manufactures motor vehicle fuel grade alcohol and distributes and sells this alcohol in Washington, (2) a Connecticut corporation which acts as an agent for producers of motor vehicle fuel grade alcohol and sells its producers' alcohol in Washington, and (3) a King

## Conclusion

We hold that the repeal of the tax exemption and tax credit relating to gasohol did not "raise existing taxes"; the repeal thus did not violate section 13 of Initiative 601. Section 13 was enacted as a part of former RCW 43.135, the law limiting legislative tax increases during the time section 13 was in effect. Consequently, even if the repeal of the exemption and credit considered in the present case were determined to be an increase in the existing tax (which it is not), it would be excluded from the meaning of "tax revenue" under former RCW 43.135.020(1) and thus not subject to the limitations of that statute, including the limitation imposed by section 13.

The trial court is reversed and this case is remanded for entry of an order granting the Department's motion for summary judgment.

DOLLIVER, SMITH, JOHNSON, TALMADGE, and PEKELIS, JJ., concur.

DURHAM, C.J. (dissenting) — The majority's artificially narrow interpretation of section 13 of Initiative 601 is belied by the broad and simple language of the section itself. *See* Laws of 1994, ch. 2. Under that section, "the state may raise existing taxes, impose new taxes as authorized by law, or make revenue-neutral tax shifts only with approval of a majority of the voters at a November general election." Laws of 1994, ch. 2, § 13, p. 23. The language covers all possibilities; even *revenue-neutral* tax shifts are barred. If there is a more clear or comprehensive way of saying "no further taxes," I am unaware of it. Therefore, I respectfully dissent. I would hold the Legisla-

County resident who drives approximately 20,000 miles in Washington per year and who purchases hundreds of gallons of motor vehicle fuel, including gasohol, each year. The corporate plaintiffs claim that as a result of the Legislature's repeal of the gasohol tax exemption and credit they were compelled to sell their alcohol either in other states at prices significantly lower than those previously paid in Washington or were forced to sell at significantly lower prices in Washington. The individual plaintiff claims he has had to pay higher motor vehicle fuel taxes for gasohol and other fuel as a result of ESHB 2326.

ture's action should be submitted to a vote of the people, as section 13 requires.

The majority offers two holdings. The first holding boils down to the conclusion that repeal of a tax exemption is not a tax increase. The second suggests that section 13 of Initiative 601 amends a preexisting statute and is subject to the limited scope of that statute. In my view, neither holding is compelling, convincing, or correct.

Three rules of construction guide my interpretation of Initiative 601. First, in construing an initiative, the language is to be read as the average informed lay voter would understand it. *Estate of Turner v. Department of Revenue*, 106 Wn.2d 649, 654, 724 P.2d 1013 (1986). Second, the collective intent of the people becomes the object of a court's search for legislative intent when construing a law adopted by a vote of the people. (Citation omitted.) *Department of Revenue v. Hoppe*, 82 Wn.2d 549, 552, 512 P.2d 1094 (1973). Third, "[i]n case of doubt, taxing statutes are construed most strongly against the government and in favor of the taxpayer." (Citation omitted.) *Hoppe*, 82 Wn.2d at 552.

The majority first holds that:

[T]he words "raise existing taxes" as contained in section 13 are plain, unambiguous, and well understood according to their natural and ordinary meaning. In its ordinary sense, the phrase "raise existing taxes" means to increase the existing statutory rate of taxation.

Majority at 424. To support this natural and ordinary reading, the majority appeals to BLACK's LAW DICTIONARY and *Shepard's Tax Dictionary*. Majority at 426. I do not think the average lay voter is conversant with *Shepard's Tax Dictionary*. I think the more natural and direct reading is, to paraphrase Gertrude Stein, that a tax is a tax is a tax.

I cannot agree with the majority that raising taxes is defined by an increase in tax rates alone. While an increase in tax rates is surely a form of tax increase, there are other forms of raising taxes as well. In the ordinary

commonsense view of things, subjecting a class to a tax to which it had not previously been subject is a form of "rais-[ing] existing taxes." Section 13. In other words, the repeal of an exemption is equivalent to raising a tax. A simple example makes the point. If the exemption from the state sales tax for food were abolished, the average person would experience a tax increase, even though the sales tax rate would not have changed at all. *See* RCW 82.08.0293.

The majority's analysis suffers from additional problems. Its narrow interpretation requires wrenching the phrase "raise existing taxes" from its context. Even assuming the majority's crabbed reading is plausible in isolation or in some other context, the phrase is part of a sentence that bans all logically possible forms of tax increase, including revenue-neutral tax shifts. Moreover, even granting for the sake of argument that the phrase is ambiguous, the relevant rule of construction requires us to construe ambiguous tax statutes "most strongly against the government and in favor of the taxpayer." (Citations omitted.) *Hoppe*, 82 Wn.2d at 552.

The Department of Licensing mischaracterizes the nature of the main issue also. Respondents do not assert that the resulting increase in revenue is the distinguishing mark of an increase in existing taxes. *See* Corrected Br. of Appellants at 20. Instead, Respondents' contention is simple. Bringing a class of entities within the scope of an existing tax raises the taxes of that class.

The majority implies that the mere effect of raising an individual's tax burden does not amount to raising a tax. Majority at 425-26. However, the tax exemption here did not merely benefit a particular individual. Instead, it applied to an entire class of persons. Obviously, most taxes apply only to specific classes or groups (those making purchases, those owning homes, those engaged in a business or occupation, etc.) not the whole population.

The majority offers a second or alternative holding:

> Additionally, we hold that section 13 of Initiative 601 was enacted as an amendment or addition to the existing law

which limited the Legislature's authority to raise state tax revenues. As such, the section must be construed as part of the existing statute. That statute does not apply to legislation affecting motor vehicle fuel taxes.

Majority at 427. There are two problems with this holding. First, notwithstanding its protestations, *see* majority at 428 n.6, the majority comes perilously close to deciding an important issue not before the court. Whether the restrictions in the second phase[7] of Initiative 601 apply only to the general fund is an issue of great consequence to the people of this state. That issue should not be decided by implication in a case that does not directly raise the issue. At best, the majority clouds the larger question by deciding that section 13, which does not even mention the general fund, is nevertheless restricted to it.

Second, the majority's argument supporting the second holding is far weaker than it appears. The majority argues that Initiative 601 generally amends RCW 43.135. Since the limitations in RCW 43.135 apply only to the general fund, the majority argues, the limitations in section 13 also apply only to the general fund. Majority at 427-28.

That some of the sections in Initiative 601 amend RCW 43.135 does not, of course, mean section 13 does. The majority's argument rests on nothing more than the vague assertion that section 13 must have someplace to go when it comes time to codify session laws, and RCW 43.135 looks like a good candidate.[8] One may contrast this vague imputation of a context with the clear, unequivocal, and comprehensive prohibition on tax increases of any kind in section 13 itself.

Moreover, the majority fails to notice a crucial fact.

---

[7]Initiative 601 has two phases. The first phase was limited in duration. It began December 2, 1993 (the day the November 1993 election results were certified) and ended June 30, 1995. *See* Laws of 1994, ch. 2, § 13, p. 23. In the first phase, the Legislature is prohibited from raising existing taxes, imposing new taxes, or shifting taxes in a revenue-neutral manner. The second phase began July 1, 1995 and continues indefinitely. In the second phase, there is no longer a blanket cap on raising taxes. Rather, a state *spending* limit is set. Only the first phase is at issue here. *Id.*

[8]In fact, the Code Reviser did *not* codify section 13 under RCW 43.135, a fact the majority does its best to obscure. *See* majority at 427 n.4.

The Initiative took special care to delineate which sections of the Initiative were to be added to RCW 43.135. "Sections 2, 3, 4, 8, 9, and 10 of this act are each added to chapter 43.135 RCW." Laws of 1994, ch. 2, § 11, p. 23. Note that section 13 is not among the sections listed. *See also* Laws of 1994, ch. 2, preamble, p. 18; Laws of 1994, ch. 2, § 9, p. 23. It is a standard rule of construction that what is not expressly mentioned is intentionally excluded. *Bour v. Johnson*, 122 Wn.2d 829, 836, 864 P.2d 380 (1993). In any event, even if this only creates an ambiguity, ambiguities in tax statutes must be construed "strongly against the government and in favor of the taxpayer." (Citations omitted.) *Hoppe*, 82 Wn.2d at 552.

Finally, the Department of Licensing reminds us that the people of Washington have an interest in the elimination of obsolete tax credits and preferences. I have no doubt of that. Indeed, a structure for the periodic reevaluation of tax preferences and credits exists. *See generally* RCW 43.136. Nevertheless, the language of section 13 is clear. Under that language, any legislative action taken between December 2, 1993 and July 1, 1995 which had the effect of raising existing taxes, imposing new taxes, or making revenue neutral tax shifts is subject to the approval of the voters. Even if the Legislature was acting under the tax credit review mechanism in RCW 43.136, section 13 would still control. As that section explicitly states, "[t]he requirement for a vote at a November general election is *in addition to* any other requirements established by law." (Italics mine.) Laws of 1994, ch. 2, § 13(1), p. 24. I would hold the Legislature's action should be submitted to a vote of the people in accord with section 13 and the enactment at issue here.[9]

ALEXANDER, J., concurs with DURHAM, C.J.

---

[9]"If a court enters a final order invalidating or remanding section 1 of this act on the grounds that it does not comply with section 13, chapter 2, Laws of 1994, it is the intent of the legislature that this measure be submitted to the people for their adoption, ratification, or rejection, at the next succeeding general election . . . ." Laws of 1994, ch. 225, § 3(1), p. 1246.

434

MADSEN, J. (concurring in part) — I agree with the dissent that the repeal of the gasohol tax exemption and credit is an "increase in taxes" as contemplated by section 13 of Initiative 601. I agree with the majority, however, that section 13 must be interpreted as an amendment or addition to RCW 43.135, the law which is being altered by Initiative 601. That law relates only to "state tax revenues" which, as defined, excludes revenues like the gas tax at issue here.