127 F.3d 1108
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Daniel J. UMAMOTO, Defendant-Appellant.
 No. 96-10301.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted August 8, 1997.
Decided Oct. 14, 1997.
As Amended on Denial of Rehearing Dec. 18, 1997.
 
 Appeal from the United States District Court for the District of Hawaii Hon. David A. Ezra, District Judge, Presiding
 Before FLETCHER, BOOCHEVER, and REINHARDT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Daniel Umamoto pleaded guilty to offenses involving the sale of methamphetamine. At the time he committed these offenses, Umamoto was out on bail awaiting sentencing on a prior drug conviction. He received a 10-year sentence for the first conviction and a five-year sentence for the second. The second sentence was imposed three days after the first, but the sentences were imposed by two different judges. Under the plea agreement for the second offense, 48 months of the second sentence were to run concurrently with the 10-year sentence and the remaining 12 months were to be served consecutively. However, the second sentencing judge decided that 36 months of the second sentence should be served consecutively. The combined effect of the actual sentences was thus considerably more harsh than what Umamoto would have received if he had been sentenced for both convictions at the same time or if he had received the sentence recommended in his plea agreement.
 
 
 3
 Arguing that the second judge misapplied the sentencing guidelines, that the government breached the plea agreement, and that the district judge erred by failing to make factual findings, Umamoto appeals.
 
 I. WAIVER
 
 4
 Prior to addressing the merits of Umamoto's claims, we must determine whether Umamoto retained the right to appeal the district court's sentence. As the government conceded at oral argument, United States v. Buchanan, 59 F.3d 914 (9th Cir.), cert. denied, 116 S.Ct. 430 (1995), controls this case with respect to whether Umamoto waived his right to appeal in the plea agreement. Under Buchanan, the district judge's oral assurances to Umamoto that he maintained his right to appeal effectively invalidated any waiver contained in the plea agreement.
 
 
 5
 Although Umamoto's waiver of his appellate rights in the plea agreement does not bar this court from considering the appeal, the government argues that Umamoto cannot appeal in any event because he failed to raise any objections in the district court. With respect to Umamoto's claim that the district judge applied the wrong version of the guidelines, we believe that this issue was raised below. At the sentencing hearing, Umamoto squarely asked the court to reconsider the extent to which his second sentence would run consecutively to the first; the court refused. This issue is therefore fairly before us. Umamoto did not, however, raise in the district court either his claim that the government breached the plea agreement or that the district judge erred in failing to make factual findings With respect to these claims, we see no reason to depart from the general rule that we will not consider on appeal issues that were not first presented to the trial court. See United States v. Flores-Payon, 942 F.2d 556, 558-59 (9th Cir.1991); see also United States v. Gonzalez, 16 F.3d 985, 988-99 (9th Cir.1993) (finding no procedural bar when the issue on appeal was not whether the government's breach of the plea agreement required resentencing, but whether the breach released the defendant from his waiver of the right to appeal, and allowing the defendant to raise on appeal issues properly raised in the district court).
 
 II. APPLICATION OF THE GUIDELINES
 
 6
 At the heart of Umamoto's appeal is the district court's decision to impose a sentence more severe than what the parties recommended in the plea agreement and more severe than what he contends he would have received had he been sentenced for all the offenses at the same time instead. of three days apart. In order to address the merits of Umamoto's arguments, we must initially determine which version of the guidelines should have been used to calculate Umamoto's sentence. In plea agreement # 2, Umamoto admitted to committing three offenses. One offense occurred on October 20, 1995 and the other two occurred on November 17, 1995. A revised version of the guidelines became effective on November 1, 1995. According to the policy statement in § 1B1.11(b)(3) of the guidelines
 
 
 7
 If the defendant is convicted of two offenses, the first committed before, and the second after, a revised edition of the Guidelines Manual became effective, the revised edition of the Guidelines Manual is to be applied to both offenses.
 
 
 8
 U.S.S.G. § 1B1.11(b)(3). Recently, however, we acknowledged that the "one-book" policy statement could violate the Ex Post Facto Clause in cases involving multiple-count convictions where one of the offenses was completed prior to the date the revised guidelines became effective. United States v. Ortland, 109 F.3d 539, 546-47 (9th Cir.1997). In Ortland, we held that if adhering to § 1B1.11(b)(3) would violate the Ex Post Facto Clause, a sentencing court should use different versions of the guidelines notwithstanding the policy statement. Therefore, we must determine whether applying the 1995 guidelines for all three offenses violates the Ex Post Facto Clause.[1]
 
 
 9
 Under Miller v. Florida, 482 U.S. 423, 432 (1987), applying a later version of the guidelines to conduct completed before that version took effect violates the prohibition against ex post facto laws if the later version "substantially disadvantages" the defendant. Although we believe that in some cases applying a later version of § 5G1.3(c) might violate the Ex Post Facto Clause, it is evident that in this case, Umamoto was not disadvantaged by the use of the later version because the earlier conduct had no effect whatsoever on the guideline range for the offenses. The total quantity of drugs Umamoto admitted to possessing on October 20 did not change his offense level for the November charges[2]--the offense level would have been the same even if the district court had simply ignored the October offense. Thus, Umamoto suffered no disadvantage from the district court's failure to employ the methodology contained in the 1994 version of § 5G1.3(c).
 
 
 10
 Umamoto also argues that the district court abused its discretion in making 36 months of his 60-month sentence run consecutively to the 10-year sentence he had received for the first offense. The district court adequately explained why it decided that part of the sentences should be served consecutively, and we conclude that it did not abuse its discretion. See United States v. Otis, 127 F.3d 829, 834 (9th Cir. 1997).
 
 CONCLUSION
 
 11
 We find that the district court's application of a later version of § 5G1.3(c) to conduct completed before that version took effect did not violate the prohibition against ex post facto laws. Therefore, we affirm Umamoto's sentence.
 
 
 12
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The government cites as supplemental authority a recent decision that presented the issue whether the application of a later version of § 5G1.3(c) to conduct completed before the implementation of the later version could violate the Ex Post Facto Clause. United States v. Gilcrist, 106 F.3d 297 (9th Cir.1997). However, we did not reach the merits of the issue because we determined that Gilcrist had Expressly consented to the use of the later guidelines. Id. at 302. Unlike Gilcrist, Umamoto did not consent to the use of a particular version of the guidelines
 
 
 [2]
 Umamoto pleaded to possession of 0.091 gram of methamphetamine on October 20 and to attempted possession of 28.5 grams of methamphetamine on November 17. Since the November offense invoked a higher sentencing range, application of the 1995 version's offense level was unaffected by the October offense. Under § 2D1.1(c)(11), offenses involving between 20 and 40 grams of methamphetamine receive the same offense level